UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARGARET MISHAW,
*Personal Representative of the Estate of Michael Mishaw*,

Plaintiff,

v.

JACKSON COUNTY, et al,

Defendants.

Case No. 2:25-cv-11007

Honorable Susan K. DeClercq
United States District Judge

______________________________/

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 13, 14), DISMISSING THE AMENDED COMPLAINT (ECF No. 9), AND CLOSING THE CASE**

Michael D. Mishaw spent half a day in the Jackson County Jail after his arrest for allegedly violating a protective order. He injured himself, lost consciousness, and laid unconscious on the cell floor for more than two hours before anyone came. He sued five named Jackson County officers, an unnamed officer, and Jackson County itself, alleging they violated his constitutional right to medical care. [1] The officers and Jackson County move to dismiss for failure to state a claim, and the officers argue they are entitled to qualified immunity. For the reasons below, this case will be dismissed without prejudice.

---

[1] Margaret Mishaw was substituted as Plaintiff following Michael Mishaw's unrelated death in January 2026. *See* ECF Nos. 22; 29–31.

# I. BACKGROUND

## A. Factual Allegations

According to Mishaw's amended complaint, around 1:00 A.M. on March 8, 2024, a Blackman Township Public Safety (BTPS) officer arrested Michael D. Mishaw and took him to the Jackson County Jail for allegedly violating a protection order. ECF No. 9 at PageID.56. Soon after Mishaw arrived, five deputies and sergeants—whom the complaint calls the "Defendants Jackson Officers"—strapped him into a restraint chair. *Id.* By about 1:30 A.M., the Jackson Officers placed Mishaw in cell 1D Inner-Booking, where he remained, still in the chair, for roughly two and a half hours. *Id.* At about 4:00 A.M., the Jackson Officers released him from the chair and left him alone. *Id.*

Alone in his cell and unrestrained, Mishaw began to suffer a "medical and/or psychological episode." *Id.* at PageID.56–57. He "perceive[d] extreme heat and steam coming from the sink and/or toilet," along with poor water flow and water temperature. *Id.* at PageID.56. He later removed his clothes, became progressively incoherent, and spent much of his confinement "thrashing, groaning, and yelling." *Id.* at PageID.59.

Mishaw complained about the perceived conditions, but no one responded. *Id.* at PageID.57. So Mishaw tried to fix the conditions himself. *Id.* at PageID.58. He also tried "cleaning" himself at the cell's sink and toilet, injuring himself in the

process. *Id.* at PageID.57. At about 4:51 A.M., the Jackson Officers entered his cell, ordered him to get on the floor, handcuffed him, and walked him out so an inmate trustee could clean the cell. *Id.* They neither treated his injuries nor called for medical help at this point. *Id.*

At 5:30 A.M., the Jackson Officers returned Mishaw to his cell and strapped him back into the restraint chair. *Id.* At about 6:45 A.M., the Jackson Officers released Mishaw from the chair, changed his clothes, and left him alone—again neither treating his injuries nor calling for help. *Id.* at PageID.58. From about 7:00 A.M. to 11:20 A.M., Mishaw complained about the water and room temperature, again without response. *Id.* So he tried once more to stop the water and adjust its temperature, injuring himself further. *Id.*

At 11:20 A.M., Mishaw fell and injured himself again. *Id.* He laid unconscious on the cell floor for approximately two and a half hours. *Id.* Then at 1:55 P.M., the Jackson Officers entered the cell and began treating his injuries. *Id.* at PageID.59. At about 2:06 P.M., they placed him in a wheelchair, wheeled him out of the cell, and took him to Henry Ford Hospital-Jackson. *Id.*

These events left Mishaw with fractures to his right hand and a closed avulsion fracture of his left fibula, along with head injuries and burns and lacerations to his arms, hands, feet, and legs. *Id.* at PageID.65.

### B. Procedural History

On April 8, 2025, Mishaw filed his original complaint, naming as Defendants, Jackson County and the "Jackson Officers" Sergeant D. Ashby, Sergeant Broadworth, Deputy Wells, Deputy Anderson, and Deputy Stricklen.[2] . ECF No. 1. He filed an amended complaint on June 18, 2025. ECF No. 9. On July 16, 2025, Jackson County moved to dismiss under Civil Rule 12(b)(6). ECF No. 13. The same day, the Jackson Officers filed their own motion under the same rule. ECF No. 14. Mishaw timely responded to both motions, ECF Nos. 16, 17, and each set of Defendants replied, ECF Nos. 20, 21.

On January 30, 2026, Defendants informed this Court that Mishaw may have died. *See* ECF No. 22. The Parties confirmed his death at a February 10, 2026, status conference. On May 8, 2026, this Court substituted Margaret Mishaw, personal representative of the Estate of Michael Mishaw, as Plaintiff. ECF No. 31. For clarity, this Order refers to the claims herein as Mishaw's allegations. This Court has determined that a hearing on the motion is not necessary and will decide it on the papers. *See* E.D. Mich. LR 7.1(f)(2).

[2] The collective "JACKSON OFFICERS" also includes a John Doe Defendant. ECF No. 9 at PageID.55.

## II. LEGAL STANDARD

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). When considering a Civil Rule 12(b)(6) motion, courts must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do."). To survive a motion to dismiss under Civil Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim has "facial plausibility" when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

### A. 42 U.S.C. § 1983 Deliberate Indifference Claims

In Count I, Mishaw brings allegations of deliberate indifference to his serious medical needs under 28 U.S.C. § 1983 in violation of the Fourth, Eighth, and

Fourteenth Amendments. *See* ECF No. 9 at PageID.62. But the Fourth and Eighth Amendments are not applicable because "there is no Fourth Amendment right to medical care," *Colson v. City of Alcoa, Tenn.*, 37 F.4th 1182, 1189 (6th Cir. 2022); and the Eighth Amendment protects convicted prisoners—not pretrial detainees like Mishaw. *See* ECF No. 9 at PageID.56; *see also Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018) ("The Eighth Amendment[] . . . generally provides a basis to assert a § 1983 claim of deliberate indifference to serious medical needs, but where that claim is asserted on behalf of a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point."). Accordingly, Mishaw's claims for Fourth and Eighth Amendment violations will be dismissed with prejudice. *See Winkler*, 893 F.3d at 890; *see also Colson*, 37 F.4th at 1189.

As for Mishaw's Fourteenth Amendment claim, this Court cannot yet determine whether the Jackson Officers are entitled to qualified immunity. Mishaw has adequately alleged a serious medical need. But, as the Jackson Officers argue, the Amended Complaint lumps all of the officers together, never identifying which officer's conduct caused which alleged violations. *See* ECF No. 14 at PageID.175. Without that factual predicate, this Court cannot determine whether any defendant violated Mishaw's constitutional rights. The Fourteenth Amendment claim will therefore be dismissed without prejudice, and the qualified immunity defense is reserved.

Under 42 U.S.C. § 1983, a plaintiff may sue any "person" who, under color of state law, subjects any citizen to the deprivation of any rights, privileges, or immunities secured by the Constitution. *See* 42 U.S.C. § 1983. "To prevail on a cause of action under § 1983, a plaintiff must prove (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Winkler*, 893 F.3d at 890 (internal quotation marks and citations omitted).

But "when a plaintiff pursues a § 1983 claim against an individual government official, the doctrine of qualified immunity shields the individual defendants from [civil] liability if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Scott v. City of Saginaw*, 738 F. Supp. 3d 937, 944 (E.D. Mich. 2024) (quoting *Getz v. Swoap*, 833 F.3d 646, 652 (6th Cir. 2016)). Qualified immunity provides "breathing room [to officers who] make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (cleaned up) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

Qualified immunity turns on a two-part inquiry that asks: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated[;] and (2) whether that right was clearly

established." *Harris v. Klare*, 902 F.3d 630, 637 (6th Cir. 2018) (cleaned up). Courts may address these prongs in any order. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013); *see also Pearson v. Callahan*, 555 U.S. 223, 232–36 (2009) (holding that courts may resolve qualified immunity on either prong). "If either requirement is unmet, qualified immunity shields the official from civil damages." *Hall v. Sweet*, 666 F. App'x 469, 474 (6th Cir. 2016).

**1. Clearly Established Prong**

Defendants argue that Mishaw cannot point to any case finding officers liable in similar situations. ECF No. 14 at PageID.178. Mishaw relies on *Phillips v. Roane Cnty.*, 534 F.3d 531 (6th Cir. 2008) to show that his right to medical care was clearly established at the time of the events. ECF No. 17 at PageID.311–12. Although Mishaw's argument is not on point, this Court finds that his need for medical care was clearly established.

To overcome a qualified immunity defense, the plaintiff must show that the constitutional right at issue in the complaint was clearly established at the time the events took place. *See Hall*, 666 F. App'x at 474. "A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam) (internal quotation marks and citation omitted); *see also District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). A plaintiff must identify prior precedent

placing the constitutional question "beyond debate" in the specific circumstances the officer faced. *White v. Pauly*, 580 U.S. 73, 79 (2017).

Here, Mishaw claims the Jackson Officers denied him treatment for a serious psychological illness, and "that right [to medical treatment for serious psychological illness] is clearly established." *Bays v. Montmorency Cnty.*, 874 F.3d 264, 270 (6th Cir. 2017) (citing *Clark-Murphy v. Foreback*, 439 F.3d 280, 292 (6th Cir. 2006) (collecting cases)). In *Bays*, an inmate was paranoid, angry, depressed, self-destructive, and desperately asking for help for two weeks, but the nurse treating him set his appointment weeks away and did little more before the inmate eventually killed himself. 874 F.3d at 269–70. The Sixth Circuit held that the inmate's right to treatment for a serious mental illness was clear, and it did not tie that right to suicide. *Id.* at 270. Indeed, the question was not whether the nurse recognized the inmate might kill himself, but whether a reasonable nurse would have recognized he suffered from a serious mental illness carrying many risks and requiring immediate treatment. *Id.* at 269. Although Mishaw's stay was shorter, the injuries he caused himself—burns, cuts, and broken bones—were more immediate and demanded even more urgent treatment. Thus, if the right was clearly established for the inmate in *Bays*, it was clearly established for Mishaw. *See id.* at 269–70.

**2. Constitutional Violation Prong**

Mishaw demonstrated that his Fourteenth Amendment right to be free from deliberate indifference to serious psychological illness was clearly established. Thus, this Court must next determine whether Mishaw sufficiently pleaded that that constitutional right was violated. *See Klare*, 902 F.3d at 637; *see also Pearson*, 555 U.S. at 236.

To prevail on a Fourteenth Amendment deliberate indifference claim, a pretrial detainee must satisfy both an objective and a subjective component to establish that his constitutional right was violated. *See Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585, 597 (6th Cir. 2021) (outlining the objective and subject components of a serious medical need claim required for both Fourteenth and Eighth Amendment violations). Specifically, the pretrial detainee plaintiff must show: "(1) that [he] had an objectively serious medical need; and (2) that" the defendant either intentionally ignored that need or recklessly failed to take reasonable steps to address it. *Id.*

*a. Objective Component*

Regarding the objective component, the Jackson Officers argue that Mishaw failed to plead what the serious health condition was. ECF No. 14 at PageID.177. Mishaw responds that he did identify the condition by alleging that the Jackson Officers witnessed him "removing his clothing, becoming progressively incoherent, to the point that he was thrashing, groaning, and yelling on the floor of the cell for

hours while causing himself physical injuries, including multiple fractures, burns, and lacerations." ECF No. 17 at PageID.309. This Court finds that those allegations are enough to put the Jackson Officers on notice of Mishaw's serious medical or psychological need.

"To make out a constitutional claim for denial of medical care, the plaintiff must first meet the objective component by demonstrating the existence of a sufficiently serious medical need." *Burwell v. City of Lansing, Mich.*, 7 F.4th 456, 463 (6th Cir. 2021). To allege a serious medical need, "it is sufficient to show that [the plaintiff] actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id.* (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004)).

Here, Mishaw clearly describes his serious health condition as a "medical/psychological episode" that involved self-harming behavior like lying on the floor, thrashing, yelling, groaning, removing his clothes, becoming incoherent, and injuring himself. ECF No. 9 at PageID.59. And indeed, self-harming behavior is enough to establish an objectively serious medical need even if it is not suicidal. *See Bays*, 874 F.3d at 268 (concluding that severe psychological symptoms such as "troubling thoughts, self-destructive wall-punching, [and] the hearing of voices" alone are objectively serious).

Mishaw also alleges that he sustained multiple fractures, burns, and lacerations from the episode. ECF No. 9 at PageID.65. And fractures qualify as a serious medical need. *See Young v. Campbell Cnty.*, 846 F. App'x 314, 326 (6th Cir. 2021) ("[Plaintiff's] knee fracture clearly qualifies as a serious medical need."). So do burns. *See Pack v. Martin*, 174 F. App'x 256, 264 (6th Cir. 2006) (Clay, J., concurring in part) ("[I]t is indisputable that treatment for second and third degree burns qualifies as a serious medical need."); *see also Boutire v. Johnson*, No. 12-cv-145611, 2013 WL 4053161, at *4 (E.D. Mich. Aug. 12, 2013) ("I assume, for the purpose of this motion that [the] [p]laintiff's condition [including burns] was a serious medical need."); *McKim v. Dyer*, No. 6:19-CV-225-REW, 2022 WL 188124, at *5 (E.D. Ky. Jan. 20, 2022) (finding that the plaintiff "suffered a serious medical condition when he burned his feet").

Therefore, taken together, Mishaw's allegations plausibly support an inference that the need for medical attention would have been apparent to any officer present. *See Burwell*, 7 F.4th at 463.

*b. Subjective Component*

As for the subjective component, the Jackson Officers argue that dismissal is warranted because Mishaw's Amended Complaint is an improper group pleading that consistently refers to them as a group without specifically identifying the individual officers' conduct. ECF No. 14 at PageID.175. Mishaw responds that the

Amendment Complaint should not be dismissed because "each and every one of the Jackson Officers had actual knowledge of the emergency," such that each allegation applies to "each and every defendant." ECF No. 17 at PageID.309. But because the Amended Complaint lumps the Defendant Jackson Officers together without ever distinguishing among their actions, Mishaw has not shown whether any individual defendant failed to take reasonable steps to address his serious medical need, leaving this Court unable to analyze the subjective prong.

The Sixth Circuit has consistently held that damage claims against government officials for constitutional violations must allege, with particularity, facts showing what each defendant did. *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008); *see also Marcilis v. Twp. of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012) (collecting cases). A complaint that lumps defendants together—assigning shared blame without tracing any act to any person—does not satisfy the particularity requirement. *See Marcilis*, 693 F.3d at 596. Indeed, the rule exists for a reason: each defendant is entitled to know what he or she is alleged to have done wrong. *See Harrison v. Michigan Dep't of Health & Human Servs.*, No. 22-cv-12034, 2023 U.S. Dist. LEXIS 111535, at *27 (E.D. Mich. June 28, 2023) (finding that vague and conclusory allegations about "Defendants" as a group were insufficient to put individual defendants on notice of the claims against them); *see also Hai Nguyen v. Boylan*, No. 21-6138, 2023 U.S. App. LEXIS 22358, at *6–9 (6th Cir. Aug. 21, 2023)

(reversing a denial of dismissal where the plaintiff referred to officer defendants collectively as "DEFENDANTS, and each of them" throughout the complaint, without a single officer-specific allegation).

Here, Mishaw's complaint follows that same deficient pattern. Throughout Count I, he refers to defendants collectively as "JACKSON OFFICERS," without ever identifying what any individual officer did or failed to do. *See* ECF No. 9 at PageID.61–64. Mishaw even extends this problem to Jackson County, naming it alongside the group of officers in a single undifferentiated allegation. *See id.* (alleging, for example, that "Defendants, JACKSON OFFICERS and JACKSON COUNTY, violated Plaintiff's civil rights when they displayed deliberate indifference toward Plaintiff['s] serious medical condition(s)"). Indeed, Mishaw does not identify the officer who denied him medical attention, the officer who placed him in a restraint chair, the officer who handcuffed him and removed him from his cell, the officer responsible for monitoring the cell that night, or the officer who eventually called the ambulance. *See id.* at PageID.63–64. Although unlikely, even if it took all seven officers to restrain him or handcuff him or monitor the cell, Mishaw needed to have minimally alleged that all seven officers performed each action he identified in his Amended Complaint. *See Marcilis*, 693 F.3d at 596.

This Court recognizes that Mishaw's recollection of events during a medical crisis may be imperfect. But some individualization is still required, even if Mishaw

was not sure about the officers' names at the time to be able to recall who did what. Even basic descriptive details—the officer's gender, physical appearance, or specific role during the incident—would give each Defendant fair notice and allow the case to proceed. *See Harrison*, 2023 U.S. Dist. LEXIS 111535, at *27. But because the Amended Complaint makes no sure effort, and because "there is no suggestion that the officer defendants concealed their identities or took any other action to prevent [Mishaw] from alleging facts specific to each officer defendant," the absence of individualized allegations cannot be excused. *Hai Nguyen*, 2023 U.S. App. LEXIS 22358, at *8 (citing *Greer v. City of Highland Park*, 884 F.3d 310, 315–16 (6th Cir. 2018)); *see also Burwell*, 7 F.4th at 466 ("We must address the subjective component for each officer individually and information available to one defendant may not be automatically imputed to the others.") (cleaned up).

At bottom, the Amended Complaint suffers from improper group pleading and will be dismissed without prejudice. See *Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 600 (E.D. Mich. 2015) (dismissing a complaint because the plaintiff "engaged in impermissible group pleading" that prevented the court from performing a necessarily individualized inquiry about each defendant's liability). Without adequate pleading, this Court cannot conduct the individualized analysis that the subjective prong requires to find whether Defendants are entitled to qualified

immunity. Thus, this Court will dismiss the § 1983 claims without prejudice. *See Kerrigan*, 112 F. Supp. 3d at 600–02.

### B. *Monell* Claim Against Jackson County

Mishaw's *Monell* claim against Jackson County for allegedly failing to train officers, having inadequate policies, and failing to supervise must also be dismissed because the Amended Complaint does not properly allege a constitutional violation. A municipality is a "person" subject to § 1983 liability, but only for its own official policies that cause a constitutional violation—not for the acts of its employees under a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). It follows that where no officer committed a constitutional violation, the municipality cannot be liable at all. *See Roell v. Hamilton Cnty.*, 870 F.3d 471, 487 (6th Cir. 2017). Because the Amended Complaint does not properly allege a constitutional violation by any Jackson Officer, Mishaw's *Monell* claim—premised entirely on their conduct—is not actionable and will be dismissed without prejudice. *See id.*; *see also Davenport v. Causey*, 521 F.3d 544, 554 (6th Cir. 2008).

### C. Gross Negligence Claim

In Count III, Mishaw raises a state law gross negligence claim against all Defendants brought before this Court under supplemental jurisdiction. ECF No. 9 at PageID.52, 71–74. But a district court may decline supplemental jurisdiction over related state claims for reasons listed in 28 U.S.C. § 1367(c). *See Williams v. Addison*

*Cmty. Schs.*, 168 F.4th 791, 796 (6th Cir. 2026). One such reason is that all claims over which the court has original jurisdiction have been dismissed. *See* 28 U.S.C. § 1367(c)(3). When all federal-law claims drop out before trial, the balance of judicial economy, convenience, fairness, and comity usually favors declining jurisdiction over the remaining state-law claims. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997). That is the situation here. The case is at the pleading stage, there is no diversity jurisdiction, and all federal claims will be dismissed. Therefore, this Court declines to exercise supplemental jurisdiction over Mishaw's gross-negligence claim. *See id.*; *see also* 28 U.S.C. § 1367(c).

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motions to Dismiss, ECF Nos. 13 and 14, are **GRANTED.**

Plaintiff's claims are resolved as follows:

| Claim | Legal Basis | Disposition |
|---|---|---|
| **Count I** | Fourth Amendment | Dismissed **with prejudice** |
| **Count I** | Eighth Amendment | Dismissed **with prejudice** |
| **Count I** | Fourteenth Amendment | Dismissed **without prejudice** |
| **Count II** | Municipal Liability | Dismissed **without prejudice** |
| **Count III** | Gross Negligence | Dismissed **without prejudice** |

It is **FURTHER ORDERED** that the Amended Complaint, ECF 9, is **DISMISSED WITHOUT PREJUDICE**, and the case is **CLOSED**.

**SO ORDERED.**

*/s/ Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: August 4, 2026